## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GRAYLIN GRAY, | ) | 4:10CV3219 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| FRED BRITTEN, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Graylin Gray's ("Gray" or "Petitioner") Petition for Writ of Habeas Corpus and Amended Petition for Writ of Habeas Corpus. (Filing Nos. 1 and 11 (*see* Filing No. 12 construing Filing No. 11 as an amended petition).) Liberally construing the allegations of Gray's Petition, Gray argues that he is entitled to writ of habeas corpus based on the following claims:

Claim One: The evidence was insufficient to sustain the jury's verdict of guilt beyond a reasonable doubt of criminal possession of four or more financial transaction devices in violation of the Fourteenth Amendment.

Claim Two: The evidence was insufficient to sustain the jury's verdict of guilt beyond a reasonable doubt of unlawful circulation of financial transaction devices in the first degree in violation of the Fourteenth Amendment.

Claim Three: Petitioner was denied counsel at his arraignment on the amended information in violation of the Sixth Amendment.

Claim Four: Officer Cronin did not have a reasonable suspicion of criminal activity to justify the investigatory stop of Petitioner in violation of the Fourth Amendment.

Claim Five:        The evidence was insufficient to enhance Petitioner's sentences as a habitual criminal in violation of the Fourteenth Amendment.

Claim Six:         Neither the county court nor the district court had personal or subject matter jurisdiction to try Petitioner in violation of the Fourteenth Amendment.

Claim Seven:       The prosecution used false evidence, vouched for the credibility of its witnesses, and failed to disclose impeachment evidence in violation of the Fourteenth Amendment.

Claim Eight:       The amended information does not state each fact that was an essential element of the crime charged, so that Petitioner was required to go beyond the information to learn the nature of the charge against him in violation of the Fourteenth Amendment.

Claim Nine:        The trial judge failed to instruct the jury on the pertinent law of the case in violation of the Fourteenth Amendment.

Claim Ten:         The state failed to provide a fair and reliable determination of probable cause by a judicial officer before or shortly after arrest in violation of the Fourteenth Amendment.

Claim Eleven:      Appellate counsel failed to raise and preserve the federal constitutional issues central to Petitioner's case on direct appeal in violation of the Sixth Amendment.

(Filing No. 12 at CM/ECF pp. 1-3.)  For the reasons set forth below, Gray's Petition is dismissed with prejudice.

2

## I. BACKGROUND

### A.    Gray's Conviction and Direct Appeal

On December 6, 2007, a jury found Gray guilty of criminal possession of four or more financial transaction devices and also of unlawful circulation of a financial transaction device in the first degree.  (Filing No. 15-7, Attach. 7, at CM/ECF p. 39.) The Nebraska Court of Appeals reported the lengthy pertinent factual background underlying Gray's conviction in *State v. Gray*, No. A-08-336 (Neb. Ct. App. Mar. 12, 2009) (available at Filing No. 15-4, Attach. 4), and the court will not repeat it here.

Gray timely appealed his convictions and sentences to the Nebraska Court of Appeals, raising some of the claims he now raises in his Petition and Amended Petition.  The Nebraska Court of Appeals affirmed Gray's convictions and sentences in a detailed opinion.  (*Id.*)  Thereafter, Gray sought further relief from the Nebraska Supreme Court in a petition for further review, which the Nebraska Supreme Court denied.  (Filing No. 15-1, Attach. 1, at CM/ECF p. 4.)

### B.    Gray's Post-Conviction Motion and Appeal

Gray filed a motion for post-conviction relief ("post-conviction motion") in the Lancaster County District Court on July 8, 2009.  (Filing No. 15-20, Attach. 20, at CM/ECF p. 4.)  In Gray's post-conviction motion, Gray raised some of the claims he now raises in his Petition and Amended Petition.

The Lancaster County District Court denied Gray's post-conviction motion on January 25, 2010.  (Filing No. 15-30, Attach. 30, at CM/ECF pp. 1-18.)  Gray timely appealed the denial to the Nebraska Court of Appeals, which also denied relief.  *State v. Gray*, No. A-10-147 (Neb. Ct. App. Jul. 28, 2010) (available at Filing No. 15-18, Attach. 18.)  Thereafter, Gray sought further relief from the Nebraska Supreme Court

3

in a petition for further review, which the Nebraska Supreme Court denied.  (Filing No. 15-2, Attach. 2, at CM/ECF p. 2.)

## C.    Gray's Petition for Writ of Habeas Corpus

On November 15, 2010, Gray timely filed his Petition in this court and, thereafter, filed an Amended Petition and a Brief in support of his Petition.  (Filing Nos. 1, 11, and 25.)   In response to Gray's Petition and Amended Petition, Respondent filed an Answer, two Briefs, and the relevant State Court Records.  (Filing Nos. 13, 14, 15, and 26.)  In light of these filings, the court deems this matter fully submitted.

# II.  STANDARD OF REVIEW

## A.    Standard of Review Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts.  *See* 28 U.S.C. § 2254(d).  Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  529 U.S. at 405. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable."  *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

4

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court recently noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit recently clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole

lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (quotations and citations omitted).  The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts."  *Id.* at 497.  A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims."  *Id.*  The Supreme Court agrees, recently stating:

> There is no text in the statute requiring a statement of reasons.  The statute refers only to a "decision," which resulted from an "adjudication."  As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

## B.   Requirement of Exhaustion

As set forth in 28 U.S.C. § 2254(b)(1):

> (b)(1)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or

6

(ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas relief. Id. at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. See Akins v. Kenney, 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005) (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and

7

is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted).

## III.  DISCUSSION

### A.    Claims One and Two

Gray's first and second claims are that the evidence adduced at trial was insufficient to support his convictions. (Filing No. 11 at CM/ECF p. 2.) The court's review of Claims One and Two is limited by the standard of review described above.

8

In addition, within the context of § 2254, the court considers "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Liggins v. Burger*, 422 F.3d 642, 647 (8th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

As set forth below, the Nebraska state courts considered and rejected Claims One and Two on direct appeal. In addition, Gray petitioned the Nebraska Supreme Court for further review of Claims One and Two, and his petition was denied. (Filing No. 15-1, Attach. 1, at CM/ECF p. 4.)

## 1.    State Court Findings, Claim One

With respect to Claim One, Gray argues that the evidence was insufficient to convict him of possessing four or more financial transaction devices because the prosecution's witnesses—specifically, Officer Cronin and Investigator Flood—did not actually witness him in possession of the devices. (Filing No. 25 at CM/ECF pp. 26-28.) In rejecting this argument, the Nebraska Court of Appeals found that it "completely ignores the concept of circumstantial evidence." (Filing No. 15-4, Attach. 4, at CM/ECF p. 15.) To this end, the court stated:

> The credit cards and checks at issue came from a Crown Royal bag that Cronin observed in Gray's jacket pocket. In other words, the bag containing financial transaction devices was in Gray's possession or under his control. At some point, the contents of the bag were spread across the back of a police cruiser, and Flood later took custody of those items and inventoried them. Flood's inventory showed credit cards and checks issued to more than eight different account holders. Viewing the evidence in the light most favorable to the State, Gray clearly possessed four or more financial transaction devices.

(*Id.*)

### 2.     State Court Findings, Claim Two

With respect to Claim Two, Gray argues that the evidence was insufficient to convict him of unlawful circulation of a financial transaction device in the first degree because the prosecution's witnesses—specifically, Medina, Fuqua, Wood, Rex, Dinkins, and Wallace—did not see Gray sell the devices or have them in his possession or under his control.  (Filing No. 25 at CM/ECF pp. 30-42.)  In rejecting this argument, the Nebraska Court of Appeals found that, while there was no evidence that Gray sold any of the devices, the crime could also be committed by having the devices in his possession with the intent to deliver or circulate.  (Filing No. 15-4, Attach. 4, at CM/ECF p. 17.)  The court stated,

> The evidence of witnesses such as Wallace, Medina, Wood, Dinkins, Fuqua, and Rex established that Gray had checks and credit cards in his possession and that he gave them to those witnesses to obtain money or purchase goods.  Because these items did not belong to Gray, he knew or reasonably should have known that they were lost or stolen.  The evidence was sufficient to sustain the conviction.

(*Id.*)

### 3.     Deference

The foregoing findings of fact and conclusions of law made by the state courts are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  Thus, after a careful review of the record, the court finds that the Nebraska state court decisions on the issues raised in Claims One and Two were neither contrary to clearly established federal law nor involved an unreasonable application of clearly established federal law.  As such, Gray's request for relief on Claims One and Two is denied.

10

**B.     Claim Three**

Gray's third claim is that he was denied counsel at his arraignment on the amended information in violation of the Sixth Amendment.  (Filing No. 11 at CM/ECF pp. 2-3.)  Here, the court's review of Claim Three is limited by the standard of review described above.  In addition,

> [t]he Sixth Amendment provides a criminal defendant the right to counsel and the corresponding right to waive the right to counsel and proceed pro se.  If the defendant waives the right to counsel, the waiver must be voluntary, intelligent, and knowing. This standard is met if the trial court specifically informed the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences the defendant knew and understood the disadvantages.

*United States v. Armstrong*, 554 F.3d 1159, 1165 (8th Cir. 2009) (citations and quotations omitted).

As set forth below, the Nebraska state courts considered and rejected Claim Three on direct appeal.  In addition, Gray petitioned the Nebraska Supreme Court for further review of Claim Three, and his petition was denied.  (Filing No. 15-1, Attach. 1, at CM/ECF p. 4.)

**1.     State Court Findings, Claim Three**

With respect to Claim Three, Gray argues that his waiver of his right to counsel was not made knowingly and intelligently.  (Filing No. 25 at CM/ECF pp. 48-49.)  In addition, Gray argues that his arraignment on the amended information without the assistance of counsel was a clear violation of the Sixth Amendment.  (*Id.* at CM/ECF pp. 58-59.)

In rejecting Gray's arguments, the Nebraska Court of Appeals found that the record showed Gray understood his right to counsel and he voluntarily, intelligently, and knowingly waived it. (Filing No. 15-4, Attach. 4, at CM/ECF pp. 17-22.) The Nebraska Court of Appeals wrote the following on the issue of whether Gray's waiver of counsel was voluntary, intelligent, and knowing:

> On June 30, 2006, the district court held a hearing on Gray's request to proceed pro se. Gray stated that he wanted to represent himself, that he did not want an attorney to represent him, and that he felt he could handle the case on his own. The court then asked a number of questions in order to determine whether Gray understood the nature of the charges against him and the dangers and disadvantages of representing himself. Gray's answers to the court's questions revealed that he had been represented by attorneys in the past, that he had previously represented himself, and that he had been previously involved in a jury trial. Gray answered that he understood the various parts and procedures involved in a jury trial. Gray also stated that he understood the crimes for which he was charged and the possible penalties associated with each of the crimes. The court advised Gray that if it allowed Gray to discharge his attorney and represent himself, that the court would probably appoint Gray's attorney as standby counsel. The court further advised Gray that he would not be entitled to any special privileges solely because he was representing himself. Gray stated that he understood all of the above advisements and that he still wished to discharge his attorney and represent himself. The court asked whether Gray understood that the court believed it was a mistake for Gray to represent himself, and Gray answered that he understood.

(*Id.* at CM/ECF p. 18.)

With respect to Gray's argument that he should have been represented by counsel at his arraignment on the amended information, the Nebraska Court of Appeals concluded that the record as a whole demonstrated that Gray had knowingly and intelligently waived his right to counsel prior to the arraignment on the amended

information.  (*Id.* at CM/ECF pp. 21-22.)  Further, the Nebraska Court of Appeals cited to *State v. Green*, 470 N.W.2d 736 (1991), which states that "once a defendant is informed of the right to retained or appointed counsel, there is no requirement that the court advise the defendant on each subsequent court appearance of that same right."  470 N.W.2d at 744.  This court notes also that Gray had standby counsel available to him at the arraignment on the amended information, and also throughout the district-court proceedings.  (*See* Filing No. 15-8, Attach. 8, at CM/ECF p. 13.)

### 2.    Deference

The foregoing findings of fact and conclusions of law made by the state courts are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  Thus, after a careful review of the record, the court finds that the Nebraska state court decisions on the issues raised in Claim Three were neither contrary to clearly established federal law nor involved an unreasonable application of clearly established federal law.  As such, Gray's request for relief on Claim Three is denied.

### C.    Claim Four

Gray's fourth claim is that Officer Cronin did not have reasonable suspicion of criminal activity to justify the investigatory stop of Gray in violation of the Fourth Amendment.  (Filing No. 11 at CM/ECF p. 3.)  Respondent argues that this court is barred from reviewing Gray's Fourth Amendment claim because Gray had an opportunity to fully and fairly litigate the claim in state court.  (Filing No. 14 at CM/ECF p. 24.)  The court agrees.

The United States Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), precludes this court from reviewing Claim Four.  Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment

13

claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. In practice, this means that "Fourth Amendment claims asserted by state prisoners in federal habeas petitions are to be treated differently from other constitutional claims . . . ." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994).

In order for Gray to show that he was not afforded a full and fair litigation of his claim, he must show that "the State 'provided no corrective procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Willett*, 37 F.3d at 1271-72).

Here, it is clear from the record that the Nebraska courts provide a corrective process to address the alleged Fourth Amendment violations. Nebraska procedures allowed Gray to raise his Fourth Amendment claim in a pre-trial motion to suppress and to challenge the findings on direct appeal to the Nebraska Court of Appeals and in a petition for further review to the Nebraska Supreme Court. (*See* Filing No. 15-15, Attach. 15, at CM/ECF pp. 56-59; *see also* Filing No. 15-16, Attach. 16, at CM/ECF pp. 59-61.) Gray does not argue that there was any "unconscionable breakdown" in Nebraska's process or that he was prevented from raising his Fourth Amendment claims throughout this process. Rather, Gray reargues the merits of his Fourth Amendment claim. However, the court cannot consider the claim because it finds that the Nebraska courts provided an adequate procedure for Gray to raise his Fourth Amendment claim, and that Gray was not foreclosed from using that procedure. In light of this, Claim Four is dismissed.

**D.      Claim Five**

As an initial matter, the court will address Respondent's argument that Claim Five is procedurally defaulted. Specifically, Respondent argues that Claim Five is procedurally defaulted because Gray did not fairly present its substance to the state courts as a federal due process claim. (Filing No. 14 at CM/ECF p. 27.) The court has carefully reviewed the record and finds that, out of an abundance of caution, it will address the merits of Claim Five. While Gray did not clearly raise Claim Five as a federal due process claim in his brief on direct appeal to the Nebraska Court of Appeals, he did cite to numerous state court cases in which the Nebraska Supreme Court discusses issues of federal due process.[1] (*See* Filing No. 15-15, Attach. 15, at CM/ECF pp. 65-74.)

Gray's fifth claim is that the evidence was insufficient to enhance his sentences as a habitual criminal. (Filing No. 11 at CM/ECF p. 3.) The court's review of Claim Five is limited by the standard of review described above. In addition, the court notes that in a habitual criminal proceeding in the Nebraska state courts, the state's evidence must establish with requisite trustworthiness, based on a preponderance of the evidence, that:

> (1) the defendant has been twice convicted of a crime, for which he or she was sentenced and committed to prison for not less than 1 year; (2) the trial court rendered a judgment of conviction for each crime; and (3) at the time of the prior conviction and sentencing, the defendant was represented by counsel or had knowingly and voluntarily waived representation for those proceedings.

---

[1]*See Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) ("In order to fairly present a federal claim to the state courts, the petition must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or *a state case raising a pertinent constitutional issue in a claim before the state courts*.") (emphasis added) (citations and quotations omitted).

*State v. Epp*, 773 N.W.2d 356, 377 (Neb. 2009); *see also Mempa v. Rhay*, 389 U.S. 128 (1967) (stating absence of counsel during sentencing after plea of guilty, coupled with assumptions concerning defendant's criminal record that were materially untrue, deprived defendant of due process).

As set forth below, the Nebraska state courts considered and rejected Claim Five on direct appeal.  In addition, Gray petitioned the Nebraska Supreme Court for further review of Claim Five, and his petition was denied.  (Filing No. 15-1, Attach. 1, at CM/ECF p. 4.)

### 1.      State Court Findings, Claim Five

At Gray's enhancement hearing, the state offered exhibits demonstrating six prior convictions.  On direct appeal, the Nebraska Court of Appeals considered only two of the convictions, finding that they alone were sufficient to meet the state's burden of proving that Gray had been convicted of two prior offenses carrying prison sentences of one year or more.  (Filing No. 15-4, Attach. 4, at CM/ECF pp. 37-38.) The court wrote the following with respect to the exhibits offered to demonstrate these two prior convictions:

> Exhibit 6, in conjunction with exhibit 243, showed that Gray was represented by counsel at the time of conviction and of sentencing.  The court sentenced Gray to imprisonment of 20 months to 5 years.  This evidence was sufficient to establish a conviction committing Gray to a term of incarceration over 1 year in length.
>
> The State also offered exhibit 11 and exhibit 242, which include certified copies of records concerning a Missouri felony conviction against Gray for the crime of stealing.  The docket sheet showed that Gray was represented by the public defender's office on August 6, 1986, when Gray withdrew his plea of not guilty and pled guilty.  The court then found Gray guilty.  The docket sheet further showed that Gray

16

appeared with counsel on October 6, 1986, and was sentenced to 4 years' incarceration.  This evidence was also sufficient to establish with the requisite trustworthiness a prior conviction carrying a prison sentence of 1 year or more.

(*Id.*)

## 2.    Deference

The foregoing findings of fact and conclusions of law made by the state courts are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  Thus, after a careful review of the record, the court finds that the Nebraska state court decisions on the issues raised in Claim Five were neither contrary to clearly established federal law nor involved an unreasonable application of clearly established federal law.  As such, Gray's request for relief on Claim Five is denied.

## E.    Claims Six Through Ten

## 1.    Procedural Default

Respondent argues, and the court agrees, that Claims Six through Ten are procedurally defaulted.  As set forth above, a state prisoner must "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief.  *O'Sullivan*, 526 U.S. at 844.

Gray raised Claims Six through Ten in his post-conviction motion and appeal. The Nebraska Court of Appeals rejected the claims, finding that they were barred because they could have been litigated on direct appeal.  (Filing No. 15-18, Attach. 18, at CM/ECF p. 5.)  *See Hall*, 646 N.W.2d at 579 ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been

17

litigated on direct appeal.")  Thereafter, Gray petitioned the Nebraska Supreme Court for further review of these issues, and his petition was denied.  (Filing No. 15-2, Attach. 2, at CM/ECF p. 2.)

In light of the Nebraska state courts' "plain statement[s]" that they were rejecting Gray's federal claims on independent and adequate state procedural grounds, this court is barred from addressing the merits of Claims Six through Ten.  Stated another way, these claims are procedurally defaulted and the court cannot reach their merits unless Gray demonstrates cause and prejudice excusing the default.

## 2.    Cause and Prejudice

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice.[2]  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999); *see also Bell v. Attorney Gen. of the State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) ("A cause

_____

[2]Gray has not argued that the court's failure to consider Claims Six through Ten will result in a fundamental miscarriage of justice.  Regardless, in order for Gray to invoke the fundamental-miscarriage-of-justice exception, he would have to "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir.  2006).  As set forth above, the evidence adduced at trial was sufficient to sustain the jury's verdicts against him.

18

is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner.").

Gray does not appear to argue the existence of cause for the procedural default of Claims Six through Ten.  However, in light of Gray's allegations in Claim Eleven (i.e., that his appellate counsel failed to raise and preserve the federal constitutional issues central to Petitioner's case), the court can assume that Gray blames his appellate counsel for the failure to raise Claims Six through Ten on direct appeal.

While ineffective assistance of counsel may constitute "cause" in some circumstances, "[n]ot just any deficiency in counsel's performance will do." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Rather, "the assistance must have been so ineffective as to violate the United States Constitution.  In other words, ineffective assistance of counsel adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" which must be presented to the state courts.  *Id.* (citation omitted).

As set forth in the court's discussion of Claim Eleven below, the Nebraska state courts rejected Gray's argument that his appellate counsel was ineffective for failing to raise Claims Six through Ten on direct appeal.  In addition, this court determines that the grant of a writ of habeas corpus is not warranted on Gray's claim that his appellate counsel was ineffective (i.e., Claim Eleven).  As such, Gray has not shown sufficient cause to excuse the procedural default of Claims Six through Ten and these claims are dismissed.

**F.      Claim Eleven**

Gray's eleventh claim is that appellate counsel failed to raise and preserve Gray's "Federal Constitutional issues" on direct appeal in violation of the Sixth Amendment.  (Filing No. 11 at CM/ECF p. 6.)  Liberally construed, Gray's use of the

19

term "Federal Constitutional issues" refers to Claims Six through Ten, as these are the issues that his appellate counsel did not raise on direct appeal. Stated another way, in Claim Eleven, Gray argues that appellate counsel was ineffective for failing to raise Claims Six through Ten on direct appeal.

The Nebraska Court of Appeals addressed all parts of Claim Eleven on the merits under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000 (8th Cir. 1991).

The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 690.

Additionally, the Supreme Court has very recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals that the defendant was not deprived of effective

assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome.  As stated in *Knowles*:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, *supra*, at 473, 127 S. Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 1420.

Gray raised Claim Eleven in his post-conviction motion, on appeal to the Nebraska Court of Appeals, and in a petition for further review to the Nebraska Supreme Court.  In each instance, the Nebraska state courts rejected Claim Eleven.

### 1.	State Court Findings, Claims Six and Eleven

In Claim Eleven, in conjunction with Claim Six, Gray argues that appellate counsel was ineffective for failing to argue on direct appeal that the county and district

court lacked personal and subject matter jurisdiction to try him.  Specifically, Gray argues that the court lacked jurisdiction because (1) a uniform citation and complaint was never filed in county court, (2) the original and amended criminal complaints were not filed at least 24 hours before the time set for his appearance,[3] (3) the complaints do not bear a file stamp or date of filing, and (4) the complaints are in the name of the county attorney, but are verified by a deputy county attorney.  (Filing No. 1 at CM/ECF pp.  49-50; Filing No. 1-1, Attach. 1, at CM/ECF pp. 1-2.)

Gray raised these same arguments in his post-conviction motion and appeal, and they were rejected by the Nebraska state courts.  Specifically, in response to Gray's first argument, the Nebraska Court of Appeals pointed out that Nebraska law does not require the filing of a uniform citation and complaint for felony offenses.  (Filing No. 15-18, Attach. 18, at CM/ECF p. 7.)

Further, the Nebraska Court of Appeals found the following in response to Gray's argument that the court lacked jurisdiction because the original and amended criminal complaints were not filed at least 24 hours before the time set for his appearance:

> Even though it appears as though the complaint was not filed at least 24 hours before Gray's scheduled appearance, Gray does not point us to anywhere in the record showing that he objected to appearing in court less than 24 hours after the filing of the complaint. As the Nebraska Supreme Court stated in *State v. Nearhood*, 233 Neb. 767, 774, 448 N.W.2d 399, 404-05 (1989), when discussing the time requirement of Neb. Rev. Stat. § 29-1802 (Reissue 2008) applicable to informations,

---

[3]*See* Neb. Rev. Stat. § 29-424 ("At least twenty-four hours before the time set for the appearance of the cited person, either the prosecuting attorney or other person authorized by law to issue a complaint for the particular offense shall issue and file a complaint charging such person with an offense or such person shall be released from the obligation to appear as specified.").

"not only does [the defendant] not tell us how he was prejudiced by this failure, but the right is merely a statutory one, not one of the constitutional magnitude required for postconviction relief." The same can be said in Gray's case.

(*Id.* at CM/ECF pp. 7-8.)

Finally, in response to Gray's arguments that the complaints did not bear a file stamp or date of filing and were in the name of the county attorney, but verified by a deputy county attorney, the Nebraska Court of Appeals found that Gray's challenges were directed at complaints filed in the county court, and not directed at the information or amended information filed in the district court upon which he was actually tried and convicted. (*Id.* at CM/ECF p. 8.) As such, appellate counsel's failure to challenge these complaints did not prejudice him. (*Id.*)

## 2. State Court Findings, Claims Seven and Eleven

In Claim Eleven, in conjunction with Claim Seven, Gray argues that appellate counsel was ineffective for failing to argue on direct appeal that the prosecution (1) used false evidence, (2) vouched for the credibility of its witnesses, and (3) failed to disclose impeachment evidence in violation of the Fourteenth Amendment. (Filing No. 11 at CM/ECF pp. 4-6.)

### a. *Use of False Evidence*

Liberally construed, Gray alleges that there were five instances in which the prosecution used false evidence at trial. First, Gray argues that exhibit 211, a document entitled "Handwriting Conclusions Criteria," was "false evidence." (Filing No. 1-1, Attach. 1, at CM/ECF p. 2.) In rejecting Gray's argument, the Nebraska Court of Appeals found that Gray did not object to this exhibit when it was offered at trial and, therefore, his appellate counsel could not have been ineffective for failing

23

to raise an unpreserved issue on appeal. (Filing No. 15-18, Attach. 18, at CM/ECF p. 9.)

Second, Gray argues that Beverly Mazur's testimony regarding exhibit 211 was "false evidence." (Filing No. 1-1, Attach. 1, at CM/ECF p. 2.) In rejecting this argument, the Nebraska Court of Appeals pointed out that the court also received exhibit 214 into evidence, which Gray offered in response to exhibit 211. Thus, Gray failed to demonstrate how he was prejudiced by appellate counsel's failure to raise this issue on appeal given that both exhibits 211 and 214 were available to the jury to review and assess. (Filing No. 15-18, Attach. 18, at CM/ECF p. 10.) Further, Gray had the opportunity to cross-examine Mazur about both exhibits. (*Id.*)

Third, Gray argues that Carol Wallace presented "false testimony" when she testified that she did not have an agreement with the prosecution and did not receive any benefit for her testimony against Gray. (Filing No. 1-1, Attach. 1, at CM/ECF p. 4.) Gray alleges that he knows Wallace received a benefit for her testimony against Gray because, at an earlier hearing held pursuant to Nebraska Evidence Rule 404 when Wallace invoked her privilege against self-incrimination, she was ordered to testify "under immunity." (Filing No. 1-1, Attach. 1, at CM/ECF pp. 3-4.) The Nebraska Court of Appeals rejected this argument, finding that:

> Because Wallace had already pled guilty at the time of the rule 404 hearing, it does not appear that she received any benefit for later testifying against Gray at trial. Thus, her testimony during trial about not receiving any benefit in return for her testimony appears to be truth. Further, at trial, Gray cross-examined Wallace about her testimony during the rule 404 hearing and he certainly had the opportunity to cross-examine her about any alleged benefit or false testimony. We conclude that appellate counsel was not ineffective in failing to raise this issue on appeal.

(Filing No. 15-18, Attach. 18, at CM/ECF pp. 11-12.)

24

Fourth, Gray argues that Lavern Fuqua's testimony about observing Gray write checks was "false evidence."  (Filing No. 1-1, Attach.1, at CM/ECF pp. 5-6.)  In rejecting this argument, the Nebraska Court of Appeals found that "[t]he credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review."  (Filing No. 15-18, Attach. 18, at CM/ECF p. 12.)  Once again, the court concluded that appellate counsel was not ineffective for failing to raise this issue on appeal.

Finally, Gray argues that numerous exhibits offered by the state at trial were "false."  (Filing No. 1-1, Attach. 1, at CM/ECF p. 12.)  As best as the court can tell, the exhibits Gray complains of are credit cards, checks, and an ATM/check card belonging to victims in his case.  Gray argues that these exhibits were "false" because the state offered them to prove that he possessed and circulated financial transaction devices, however, because the victims had reported the cards and checks lost or stolen, the cards and checks were no longer "financial transaction devices."  (Filing No. 1-1, Attach. 1, at CM/ECF pp. 7-12.)  In rejecting this argument, the Nebraska Court of Appeals found as follows:

The district court determined that Gray's argument regarding financial transaction devices failed because it was contrary to the plain language of the individual statutes charged and to the plain reading of the statutes regarding financial transaction devices as a whole.  The court noted that the elements of the crimes for which Gray was convicted do not include an element requiring the financial transaction device to be valid at the time of the actor's possession or circulation and that the actor's intent is the key element rather than the validity or use of the financial transaction device.  The district court also pointed out, "Expired and revoked financial transaction devices are defined in § 28-618(6) and (15), respectively, as 'financial transaction device [s]' that are 'no longer valid.' . . . The device does not become something other than a "financial transaction device" because it has expired or become revoked or canceled."  We agree with the district court's reasoning.  And, as the district court concluded, because Gray's argument was without merit

25

under the law, Gray was not prejudiced by appellate counsel's failure to raise the claim.

(Filing No. 15-18, Attach. 18, at CM/ECF pp. 13-14.)

b.   *Vouching for the Credibility of Witnesses*

Gray alleges that the prosecution vouched for the credibility of the witnesses during closing arguments.  (Filing No. 1-1, Attach. 1, at CM/ECF p. 16.)  In rejecting this argument, the Nebraska Court of Appeals pointed out that Gray did not object to the statements made by the prosecution during closing arguments.  Thus, because Gray did not preserve this issue for appellate review, his appellate counsel was not ineffective for failing to raise it on direct appeal.  (Filing No. 15-18, Attach. 18, at CM/ECF p. 14.)

c.   *Failure to Disclose Impeachment Evidence*

Gray alleges that the prosecution failed to disclose impeachment evidence. Specifically, Gray argues that the prosecution should have disclosed (1) evidence of Roger Dinkins's mental illness, and (2) various victims' financial account records and account numbers.  (Filing No. 1-1, Attach. 1, at CM/ECF p. 41.)  In rejecting Gray's first argument, the Nebraska Court of Appeals found that Gray had elicited testimony from Dinkins that Dinkins had smoked crack-cocaine for approximately 12 years and that it had caused short and long-term memory loss.  In addition, Dinkins testified that he is "disabled mentally."  (Filing No. 15-18, Attach. 18, at CM/ECF p. 15.)  Because Gray was able to elicit this information from Dinkins on cross-examination, the Nebraska Court of Appeals found that Gray was not prejudiced by his appellate counsel's failure to raise the issue on direct appeal.  (*Id.*)

26

In addition, the Nebraska Court of Appeals rejected Gray's latter argument, finding that Gray had suffered no prejudice by appellate counsel's failure to raise the prosecutorial misconduct claim:

> [O]n direct appeal, in the context of Gray's motion for sanctions, we addressed Gray's claim that he was denied a fair trial because the account numbers reflected on checks and credit cards were not disclosed. Because this issue was addressed on direct appeal (albeit in a different context), Gray suffered no prejudice by appellate counsel's failure to also raise it as a prosecutorial misconduct claim.

(*Id.* at CM/ECF p. 16.)

### 3.    State Court Findings, Claims Eight and Eleven

In Claim Eleven, in conjunction with Claim Eight, Gray argues that appellate counsel was ineffective for failing to argue on direct appeal that the amended information did not state each fact that was an essential element of the crime charged. (Filing No. 1-1, Attach. 1, at CM/ECF p. 41.)   In rejecting Gray's argument, the Nebraska Court of Appeals found that:

> Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient. *State v. Davlin*, 272 Neb. 139, 719 N.W.2d 243 (2006). Because the amended information charged the crimes using the statutory language of Neb. Rev. Stat. §§ 28-621 and 28-622 (Reissue 2008), appellate counsel was not ineffective for failing to raise the issue on direct appeal.

(Filing No. 15-18, Attach. 18, at CM/ECF p. 16.)

### 4.    State Court Findings, Claims Nine and Eleven

27

In Claim Eleven, in conjunction with Claim Nine, Gray argues that appellate counsel was ineffective for failing to argue on direct appeal that the trial judge did not instruct the jury on the pertinent law of the case.  (Filing No. 1-1, Attach. 1, at CM/ECF p. 47.)  Specifically, Gray argues that (1) instruction number 5 should have included all 23 definitions listed in Neb. Rev. Stat. § 28-618; and (2) instruction number 6 should have stated that "knowledge" means "inporting [sic] a  perception of facts required to make up the crime."  (Filing No. 1-1, Attach. 1, at CM/ECF p. 48.)

In rejecting Gray's first argument, the Nebraska Court of Appeals found that "the court did not err in refusing to instruct the jury on definitions not pertinent to the crimes for which Gray was charged" and, therefore, appellate counsel was not ineffective for failing to raise the issue on appeal.  (Filing No. 15-18, Attach. 18, at CM/ECF p. 18.)  In addition, with respect to Gray's second argument, the Nebraska Court of Appeals found that:

> While in a criminal statute the meaning of the word "knowingly" varies with the context, it commonly imports a perception of the facts requisite to make up the crime.  *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993).  To commit an act knowingly, the defendant must be aware of what he is doing.  *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).  Thus, it appears that the court's instruction, although worded differently, was a correct statement of law.  And, as the district court found, Gray's motion contains no facts as to how the instruction he now proffers would have changed the result on appeal. Accordingly, Gray has failed to show any prejudice by counsel's failure to challenge this instruction on direct appeal.

(*Id.*)

## 5.    State Court Findings, Claims Ten and Eleven

In Claim Eleven, in conjunction with Claim Ten, Gray argues that appellate counsel was ineffective for failing to argue on direct appeal that the state failed to provide a fair and reliable determination of probable cause by a judicial officer before or shortly after arrest.  (Filing No. 1-1, Attach. 1, at CM/ECF pp. 49-50.)  In rejecting Gray's argument, the Nebraska Court of Appeals found as follows:

> [B]ased on the totality of the circumstances, and as we found on direct appeal in the context of a motion to suppress, there was probable cause to arrest Gray.  We conclude that Gray did not suffer prejudice by appellate counsel's failure to raise this issue on direct appeal.

(Filing No. 15-18, Attach. 18, at CM/ECF p. 20.)

### 6.    Deference

The foregoing findings of fact and conclusions of law regarding Claim Eleven are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  The Lancaster County District Court and the Nebraska Court of Appeals reviewed all of the evidence and determined, based on *Strickland* and other federal and state law, that Gray's appellate counsel's performance was not deficient.  The court agrees.

The court has carefully reviewed the record in this matter and finds that the Nebraska state court decisions are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Gray has not submitted any evidence, let alone clear and convincing evidence, that the Lancaster County District Court or the Nebraska Court of Appeals was incorrect in any of its factual determinations.  28 U.S.C. § 2254(e)(1).  The grant of a writ of habeas corpus is not warranted on this issue because the Nebraska state courts correctly applied *Strickland* and other federal law.

29

IT IS THEREFORE ORDERED that: Petitioner Graylin Gray's Petition and Amended Petition (filing nos. 1 and 11) are dismissed with prejudice. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 7th  day of September, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.